UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-14044-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID HAYDEN,

    Defendant.

_____/

FILED by _____ D.C.

OCT 21 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [D.E. #33]

THIS CAUSE having come on to be heard upon the aforementioned motion and this Court having reviewed the motion as well as the government's response and this Court having conducted an evidentiary hearing on October 17, 2011, at which time this Court received testimony, evidence and arguments of counsel, this Court recommends to the District Court as follows:

1.    The Defendant seeks suppression of all evidence obtained pursuant to the search warrant issued by Circuit Judge Metzger of the Circuit Court of the 19th Judicial Circuit in and for Martin County, Florida on or about June 6, 2011. The motion alleges several grounds for suppression. The summary of the Defendant's grounds are found by this Court to be as follows:

    a.    That the affidavit submitted in support of the application for search warrant failed to advise Judge Metzger that Detective Santos was unable to connect to the Defendant's computer to verify whether the 91 notable child pornography files actually contained child pornography;

b.      That these facts were omitted from the affidavit and were critical to Judge Metzger's decision concerning a determination of probable cause;

c.      That more than two months had passed from the beginning of the investigation by Detective Santos and Detective Ramos connecting the Defendant's computer to alleged child pornography and therefore this information was stale by the time that the state search warrant was issued by Judge Metzger a little over two months later;

d.      That Judge Metzger did not have an accurate description of the five files that Detective Ramos alleged contained child pornography which were accessed from the Defendant's computer. Only titles already associated with these files were provided to Judge Metzger along with Detective Broughton's (affiant's) opinion as to the children depicted in the files were pre-teens;

e.      That there is insufficient evidence that the images allegedly taken from the Defendant's computer contained minors;

f.      That the partially downloaded and/or deleted files are not admissible at trial;

g.      That there is no evidence that the Defendant knew the files accessed by law enforcement from the Defendant's computer were child pornography; and

h.      That the file names and descriptions of the five files copied by law enforcement from the Defendant's computer and viewed by law enforcement as set forth in the affidavit submitted in support of the application for search warrant are inadmissible. The Defendant argues that these file names and descriptions are immaterial, irrelevant, and highly prejudicial.

2

2.      Before this Court reviews the sworn testimony of the witnesses called at the Suppression Hearing, this Court will review for the District Court the application for search warrant which was admitted into evidence at the hearing as Government's Exhibit No. 1. This Court has reviewed the application and the affidavit. This Court will summarize the essential portions of the affidavit which this Court believes are relevant to the grounds for suppression alleged by the Defendant in his motion.

3.      The Defendant has not raised any issue concerning the description of the property being searched which was 4600 S.W. Grove Street, Palm City, Florida.   The application advised Judge Metzger that the affiant, Detective Broughton of the Martin County Sheriff's Office, had an extensive background and training in investigations of crimes dealing with on-line solicitation and sexual exploitation of children since the year 2000. Detective Broughton's affidavit reflects that he has examined hundreds of computers and computer related media in respect to his work in investigations and that he is a member of the South Florida Internet Crimes Against Children Task Force.

4.      The affidavit goes on to state in detail to explain the file sharing program that was utilized in this case and how individuals generally share files using peer-to-peer software as the Defendant allegedly did in this case thereby making certain child pornography files available for sharing with other individuals.  The affidavit goes on to explain that part of this peer-to-peer sharing involves each individual file receiving a hash value which is also known as SHA1. This is also referred to as a unique digital signature of each individual file.  This SHA (secure hash algorithm) is a digital signature assigned to each file.  Further, the affidavit advised Judge Metzger that SHA1 signatures provide a certainty exceeding 99.99 percent

3

that two or more files with the same SHA1 signature are identical copies of the same file regardless of their file names.

5.      The affidavit also explained to Judge Metzger that the file sharing software used in this case allows for the searching and sharing of pictures, movies, and other files by entering descriptive text such as search names.

6.      The affidavit alleged that on or about May 18, 2011, Detective Broughton received information from Detective Santos of the Palm Beach County School Board District Police concerning an investigation Santos had been conducting relating to possession and distribution of child pornography files on the internet. Detective Santos is also a member of the South Florida Internet Crimes Against Children Task Force. The affidavit goes on to state that on March 28, 2011 Detective Santos was working online in an undercover capacity using certain software searching for individuals possessing files of child pornography.  He encountered an internet protocol (IP) address with 91 child notable files. Those child notable files were described for Judge Metzger in the affidavit as having previously been viewed in other law enforcement investigations and determined to depict child pornography or suspected child pornography.

7.      The affidavit then goes on to relate that another member of the South Florida Internet Crimes Against Children Task Force, Detective Ramos, was also investigating child pornography at the same time as Detective Santos was in the same office. Detective Ramos encountered and downloaded five video files of suspected child pornography from the same IP address encountered by Detective Santos.  The affidavit alleges that the five video files located by detective Ramos depicted child pornography and were downloaded between March 28, 2011 at 2200 hours and March 29, 2011 at 1500 hours.  The affidavit states that

4

Detective Santos provided Detective Broughton the downloaded files for Detective Broughton's review and that those file were downloaded from the same IP address which is set forth in the affidavit. The affidavit then goes on to list the titles and descriptions of these five video files which allegedly contain child pornography.

8.      The affidavit then states that Detective Santos conducted a check of the IP address in question and found that it was registered to AT&T Internet. A subpoena was issued to AT&T seeking the subscriber information for that IP address. The response received stated that between January 21, 2011 and March 29, 2011 the service address was 4600 Grove Street, Palm City, Florida, which is the address searched pursuant to the search warrant issued by Judge Metzger and that the AT&T Internet account was currently active. A property records search of that address revealed that it is owned by David and Leigh Hayden.

9.      Detective Broughton's affidavit in summary states that based upon the information provided in the affidavit, that there was reason to believe that computers or computer related peripherals and storage media located at that address were being used to store, possess, and distribute child pornography files.

----------

10.      This Court will now review the testimony of the witnesses from the Suppression Hearing. The first witness called was Detective Brian Broughton of the Martin County Sheriff's Office. He is the affiant for the state search warrant issued by Judge Metzger on or about June 6, 2011. He is a member of the internet task force as more particularly set forth in his affidavit. This task force investigates child pornography in this geographical area.

11.     Detective Santos and Detective Ramos had been conducting separate investigations concerning child pornography on the internet. Each individually and separately came across an internet address (IP) later associated with this Defendant which contained suspected child pornography.  Detective Ramos and Detective Santos were conducting independent investigations at or about the same time in Palm Beach County, Florida, and did not know that each other had in fact encountered the same IP address. Once it was determined by Detective Santos and Detective Ramos that this computer was actually located in Palm City, Martin County, Florida they contacted Detective Broughton of the Martin County Sheriff's Department with whom they had worked on previous investigations within this same task force.  This contact with Detective Broughton took place on or about May 18, 2011.

12.     Detective Broughton testified that he knew Detective Santos and worked with him together on cases involving child pornography, as he had with Detective Ramos as well. Detective Broughton stated that he received a CD from Detective Santos with the downloaded five files containing the alleged child pornography.  He also received a copy of Detective Santos' report concerning the substance of his investigation.  Detective Santos' report indicated that he encountered 91 child notable files from the IP address associated with the Defendant's computer.  These 91 child notable files were files previously identified in other criminal investigations of child pornography as containing child pornography or suspected child pornography.  This information is available to law enforcement via a database shared by the Internet Crimes Against Children Task Force. Detective Santos' report reflects that he viewed 13 of these 91 child notable files. Further, Detective Broughton stated that the SHA1 value for these files is unique for each file  and that is how they are delineated in the database

6

utilized by law enforcement in identifying known or suspected child pornography files which may be located on an individual's computer.

13. According to his, Detective Santos did not download any of the 91 files from the Defendant's computer. Detective Broughton testified that the SHA1 value is a digital fingerprint of a file noted on the Defendant's computer. As long as the content of a particular file is not changed, the SHA1 value is the same. Detective Broughton's testified that if anyone does anything with a particular file to change the contents of that file, once they go to save that file again, a different SHA1 value is assigned to that file. This is how law enforcement databases know that the SHA1 values remain constant for a particular file that has already been identified by law enforcement investigations as containing suspected child pornography.

14. Detective Broughton was asked by counsel for the Defendant if he thought it would have been relevant to have placed in his affidavit for Judge Metzger that these files could be modified. Detective Broughton responded that he did not think that was relevant because if the files were in fact modified, the SHA1 value would change and would no longer correspond to a known and identified file containing suspected child pornography. Further, he testified that Detective Santos had already recognized 13 of the files as already having been previously been identified as suspected child pornography from other investigations.

15. Detective Broughton testified that Detective Ramos had downloaded five files from the Defendant's computer. These five files are described in the affidavit submitted by Detective Broughton to Judge Metzger. It is Detective Broughton's understanding that Detective Santos was only doing an historical search in checking if there were known SHA1 value files of known child pornography on any computer he encountered. It was during this time that Detective Santos came across the Defendant's IP address which was found to

7

contain known child pornography files in the applicable law enforcement databases. In other words, Detective Santos was not downloading nor seeking to download files specifically from the Defendant's computer. He was merely doing what was referred to as an historical search for computers that contain and/or share known files associated with child pornography.

16.     According to the information received by Detective Broughton, Detective Santos' investigation continued from approximately February 4, 2011 to March 28, 2011. Detective Broughton testified that he did view the five files downloaded by Detective Santos and provided to him on a CD. These are the files which are set forth in the affidavit by Detective Broughton. He did not determine if any of the files had been deleted or if the Defendant had attempted to delete any of the files of suspected child pornography on his computer. Detective Broughton testified that the listings of these five files in his affidavit are twofold. First, the underlined portion of each is the title that someone on the internet gave this file and was there at the time that the file was located on the Defendant's computer. Each title may have been put there by the person who originally created the file or someone subsequent thereto. Secondly, the description of each file that follows the underlined portion is the description of Detective Broughton after viewing that particular file. In his descriptions, Detective Broughton referred on occasion to pre-teen girls based on the fact that one of the girls in an interview on one of the videos identified herself as being 13 years old.

17.     Detective Broughton stated that he would not be able to determine if any particular file found on the Defendant's computer had in fact been viewed by the Defendant until a forensic search of that computer subsequent to seizure pursuant to the search warrant. In other words, during the investigative stage, it is not possible to determine whether or not a particular file had been in fact viewed by someone on that computer. The only information

available at that time of the submission of the application and affidavit for search warrant were that it was believed to be files on that computer containing suspected child pornography. A subsequent forensic search would reveal what, if any, of those files had in fact been viewed. This is not an issue for this Court to determine in respect to the pending motion to suppression. That would be an issue for the trier of fact at trial. This Court will elaborate on that later in its analysis.

18.     Detective Broughton's application and affidavit are dated June 6, 2011. The case was referred to him on May 18, 2011. In the interim, he testified there was surveillance of the Defendant's premises to make certain that it actually existed. Further, there were checks of records with AT&T to confirm information previously received. Detective Broughton admitted that he was involved in other cases at the same time and that he had to devote time to those investigations as well. Therefore, he did not immediately seek a search warrant when this matter was referred to him by Detective Santos on May 18, 2011.

19.     When asked why he did not show the videos to Judge Metzger, Detective Broughton testified that in the past, judges did not want to see the videos files and wanted to rely upon descriptions given to them in the affidavits. He stated that this would control the distribution of child pornography should there be other CDs prepared and filed in support of the affidavit.   The only evidence of the files would be retained and kept by the law enforcement agencies involved.

20.     Detective Broughton also testified that when the original information was received rom AT&T concerning the location for the IP address later associated with this Defendant, those records gave law enforcement an address which ended up being a mail drop. This required further investigation and information from AT&T to locate the premises

9

in question which is set forth in the affidavit and application for search warrant. This ended up being the Defendant's business in Palm City, Florida.

21.     Detective Broughton stated that he did not delay obtaining the search warrant to harm the Defendant or prejudice him in any way. The search warrant was served the next day after it was obtained from Judge Metzger. Detective Broughton identified the Defendant in court at the hearing as the individual he spoke with at the premises in question where the computer was seized pursuant to the state search warrant.

22.     At the time that the search warrant was executed at the Defendant's business, the Defendant admitted to Detective Broughton that he was using the files at his office to view child pornography while he masturbated. The Defendant told Detective Broughton that he specifically searched for child pornography files using various search terms that the Defendant associated with child pornography. In fact, Detective Broughton observed the Defendant's computer when he entered the Defendant's business and observed that the Defendant was in the process of downloading pornography and child pornography on his computer at that time.

23.     Detective Broughton stated that he did not have any discussion with any doctor about the ages of the individuals depicted in the five video files he viewed which were downloaded from the Defendant's computer by Detective Ramos and which are listed in the affidavit. He based his descriptions in the affidavit on what he observed from his own viewing of these five individual files and his training and experience in these types of cases. He testified that the individuals he viewed on those five files did not appear to be older individuals trying to look younger. Finally, Detective Broughton testified that the database utilized by law enforcement only picks up and refers to file names in the SHA1 value which may be found

in connection with a particular IP address. That search would reveal a file previously known in other investigations to be associated with child pornography and connecting that particular IP address even if the IP address only briefly possessed that file or even if the file had later been deleted by that IP address.

_____

24.     The next witness to testify was Detective Santos. He is a member of the task force investigating suspected child pornography. His jurisdiction is primarily Palm Beach County, Florida. He began this investigation. When he determined that it involved a premises located in Martin County, Florida, he turned everything over to Detective Broughton who he knew from previous investigations.

25.     Detective Santos determined that a particular IP address, later found to be associated with this Defendant, had 91 child notable files containing suspected child pornography in a shared folder. His investigation began on or about February 4, 2011 and concluded on or about March 28, 2011. The files he found were identified by their SHA1 value as found in the database utilized by law enforcement in these types of investigations. He did not try to access the Defendant's computer because his computer was blocked by a firewall which would not allow him to do this. While there were other computers in his investigative unit that he could have utilized, Detective Santos explained that he was merely doing an historical investigation trying to locate computers that may contain and/or offer for sharing certain files which have already been identified as containing suspected child pornography.

26.     Detective Santos testified that if anyone attempted to modify a file, that the SHA1 value would change and would not be the same.  This is how law enforcement recognizes these files as being the same files previously identified as containing suspected child pornography as long as the SHA1 value remains the same.  If a new file was created or modified, it would then be given a new SHA1 value when the modified file is saved.

27.     After determining that 13 of the 91 child notable files contained what he believed to be suspected child pornography, Detective Santos obtained a subpoena of AT&T to determine the location of the computer IP address.  When he found that it was not in Palm Beach County, but in Martin County, he contacted Detective Broughton and turned all of the investigative information over to him.

28.     Detective Ramos had become involved in the investigation because he was conducting a separate investigation during which he downloaded five suspected child pornography files from this IP address later associated with the Defendant.  Detective Santos and Detective Ramos did not know that each were conducting simultaneous investigations involving the same IP address. Detective Ramos came to Detective Santos and asked if he was conducting an investigation on a particular IP address, to which Detective Santos stated that he was.  Detective Ramos said that he had downloaded five suspected child pornography files from the computer later associated with this Defendant.  Detective Santos told Detective Ramos that he had associated 13 known child notable pornography files with that same IP address.  Detective Ramos then turned over the five video files he had downloaded to Detective Santos. Detective Santos viewed these five files and determined they were not part of the 13 files of suspected child pornography that he had identified as being on the

Defendant's computer.  However, Detective Santos is not sure if these five suspected child pornography files were in the other 91 that Detective Santos did not check.

29.     After issuing a subpoena to AT&T, Detective Santos did not get a response until on or about April 11, 2011.  Thereafter, in May 2011 he turned all the information he had, including the CD with the five suspected child pornography files, over to Detective Broughton in Martin County.  At no time was there any intentional delay to prejudice the Defendant.  In his past investigations, Detective Santos has seen deleted files staying on a computer for as long as a year.  It depends on each individual case since deleted files remain on a computer until they are overwritten by other files later.  He testified that is really a forensic question and is not his area of expertise.

––––––––––––

30.     Detective Ramos was the next witness to testify.  He is also a member of the internet task force investigating child pornography.  He is with the Boynton Beach Police Department.  On or about March 28, 2011 and March 29, 2011, he downloaded five videos from a particular IP address which he suspected contained child pornography.  During his investigations, he searches various IP addresses to see if there are any trading or sharing of child pornography by using SHA1 values of known child pornography files from law enforcement databases.  His investigation originally showed that the geographic area for that particular IP address later associated with this Defendant was in Palm Beach County.  However, later he determined that it was in fact in Martin County.

31.     The law enforcement database being utilized by Detective Ramos at the time showed that this IP address associated with the Defendant had accessed several known child

pornography files. He did not write a report in this case nor did he take any notes. He does not recall the specific number of child notable files that he came across on the Defendant's IP address. The database would only show that at some point in time files associated with child pornography were sent to a particular IP address and computer. The Defendant's computer apparently had settings on his file sharing software to allow these files to be shared with other individuals and that is how Detective Ramos was able to download these five files of suspected child pornography.

33.     Detective Ramos uploaded these five files. He testified that there could have been more files there, but he stopped at the five files he chose to download.

33.     After downloading these files, he contacted Detective Santos and asked if Detective Santos was investigating a particular IP address. He determined that Detective Santos was in fact investigating the same IP address where he had found these five files. Since Detective Santos had already started investigating the IP address and Detective Ramos was his supervisor in this task force, he determined to turn everything over to Detective Santos to let him continue with the investigation. He does not know what files Detective Santos may have viewed via the database as being child notable files on the Defendant's computer associated with the Defendant's IP address.

34.     Detective Ramos testified that his investigation could not determine whether the five downloaded files were viewed by a person at that particular IP address associated with the Defendant. However, by placing files in the shared folder, as these files were found at the Defendant's IP address, they were being made readily available to anyone to upload from the Defendant's IP address/computer.

35.     Detective Ramos testified that he did personally view the five downloaded files and determined they each contained child pornography. He did not check to see if these files had previously been identified by the law enforcement investigations as child notable files. After viewing these five files, Detective Ramos was of the opinion that they contained child pornography with children involved in each file engaging in sexually explicit conduct.  His estimation was that the children were from 10 to 13 years old as he could best recall without any notes or a report.

36.     This concluded all of the testimony and evidence submitted by the parties at the Suppression Hearing.


## ANALYSIS

37.     A defendant may challenge the validity of a search warrant affidavit by making a substantial showing that a false statement was included in the warrant affidavit knowingly and intentionally or with reckless disregard for the truth or that such material information was omitted from such affidavit.  The defendant bears the burden of showing that absent misrepresentations or omissions, probable cause for an arrest warrant or search warrant would have been lacking. United States v. Gamory, 635 F.3d 480 (11th Cir. 2011). Probable cause to support a search warrant exists if the totality of the circumstances allow the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Kapordelis, 569 F.3d 1291 (11th Cir. 2009). As stated by the court in Kapordelis, the affiant should establish a connection between the defendant and the premises to be searched and a link between that premises and any criminal activity.

15

The affidavit must supply the authorizing judge with a reasonable basis for concluding that the defendant might keep evidence of a crime at that premises.

38.     The affiant applying for a search warrant is only obligated to provide enough facts to show a fair probability that evidence of a crime would be found at the defendant's premises. United States v. Vanvrackle, 397 Fed. Appx. 557 (11th Cir. 2010).

39.     In applying the aforementioned case law to the facts before this Court, the Defendant has not met his burden of proof.  The Defendant has not established any misstatements of fact whether they be intentional or negligent.  The Defendant has not established the omission of any evidence that this Court finds would have been relevant to the determination of probable cause by Judge Metzger.

40.     The Defendant argues that the affidavit did not inform Judge Metzger that Detective Santos was not able to connect to the Defendant's computer to verify whether all of the 91 child notable files in fact contained child pornography and that this omitted evidence was critical to probable cause determination.  This Court disagrees wholeheartedly.  The evidence set forth in Detective Broughton's affidavit clearly associates the Defendant's IP address with files previously found to be associated with suspected child pornography.  Five files were downloaded from the Defendant's IP address containing suspected child pornography.  These five files were reviewed by Detective Santos, Detective Ramos and Detective Broughton.  Each detective was of the independent opinion that these files contained child pornography.

41.     The Defendant's argument that Judge Metzger did not have an accurate description of the five files belies the evidence received by this Court. The affidavit, as well as the evidence received during the Suppression Hearing, reflect the particular titles which

16

are underlined in the description of each of these files in the affidavit were associated with these files and as found online. These titles were not made up by Detective Broughton. These titles were there and available for viewing by the Defendant during his search for particular types of pornography for which he was searching. The descriptions following the underlined titles are Detective Broughton's own words describing what he viewed on those CDs. These descriptions were not available to the Defendant at the time that he viewed these file names online.

42.    There has been no case law submitted by the Defendant nor found by this Court which requires the issuing judge to actually view the suspected child pornography files. The descriptions from the titles contained in the affidavit were sufficient for Judge Metzger, in conjunction with the other details of the affidavit in which Detective Broughton stated his beliefs that the files contained child pornography, to find that there was probable cause to believe that these files downloaded from the Defendant's computer contained child pornography. Therefore, this Court finds that the affidavit, Government's Exhibit No. 1, submitted to Judge Metzger in support of the application for search warrant sufficiently set forth the description of the alleged criminal acts, being receipt and possession of the child pornography. The affidavit associated that particular criminal conduct and evidence with the Defendant via information received from AT&T concerning the ownership of the IP address and its location in Palm City, Florida. The affidavit further went on to explain the intricacies of file sharing, SHA1 value determination, database utilization by law enforcement, and connecting a suspected child pornography file with a particular IP address purportedly owned and registered in the name of the Defendant at the premises owned by the Defendant and Leigh Hayden.

43.     The Defendant's staleness argument submits that over two months expired from the time that Detective Santos downloaded the five files of suspected child pornography (March 28-29, 2011) to the time when Detective Broughton obtained the search warrant (June 6, 2011), and that this time period is too long to support issuance of the search warrant. The Defendant argues that the information contained in the affidavit was stale and Judge Metzger could not reasonably believed that evidence of a crime still existed on the Defendant's premises. Once again, the case law does not support the Defendant's position.

44.     The staleness doctrine requires that information supporting the government's application for a search warrant must show that probable cause exists at the time that the warrant issues. United States v. Bervaldi, 226 F.3d 1256 (11th Cir. 2000). In United States v. McBurnette, 382 Fed. Appx. 813 (11th Cir. 2010), the court restated its support of the staleness doctrine originally found in Bervaldi, supra. In so doing, the court reiterated that probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location and that whether information is stale is determined on the particular facts of each case. In McBurnette, based upon the particular facts and circumstances of that case, an affidavit in support of a search  warrant was not stale two years after an alleged sexual contact with the defendant. The affiant in the McBurnette case advised the warrant-issuing court that it was the affiant's experience that pedophiles never dispose of child pornography and therefore had reason to believe that the pornography would still be found at the defendant's home even though the sexual abuse had taken place some two years previous.

45.     In United States v. Richardson, 2011 WL 1979812 (S.D. Fla. 2011), the length of time between the initial download of suspected child pornography and the issuance of a

18

search warrant was approximately two months. It was found by the court in <u>Richardson</u> to not be an extraordinarily long period of time and the court even referred to that period as "relatively short." There is no particular time limit as to when the information becomes stale and the particular facts of each case control.

46.     In this case, this Court finds that the length of time from when Detective Ramos downloaded the five files of suspected child pornography on or about March 28-29, 2011 until the time when the search warrant was applied for and issued on June 6, 2011, was not unreasonably long based upon the facts of this case. As explained in Detective Broughton's affidavit, these files of suspected child pornography were stored and placed in folders to be shared with other individuals. A reasonable individual, such as an issuing judge, could therefore conclude that there was probable cause to believe evidence of child pornography still existed within two to three months after the downloaded files were taken from the Defendant's IP address. <u>See also United States v. Frank</u>, 2009 WL 2430909 (S.D. Fla. 2009). Based upon the totality of the facts in this case, this Court finds that the Defendant has not established any evidence to support his argument of staleness. The individual facts in this case and the totality of evidence received by this Court reflects a relatively short period of time of approximately seventy (70) days between the initial downloading of these suspected child pornography files by Detective Ramos and the issuance of the search warrant on June 6, 2011 by Judge Metzger.

47.     This Court also needs to address the good faith exception briefly should the District Court disagree with this Court's findings concerning the sufficiency of probable cause set forth in the affidavit of Detective Broughton. The good faith exception is applicable and permits Detective Broughton to execute the search warrant in question unless:

a.     Judge Metzger in issuing the warrant was misled by information in the affidavit that the affiant knew was false or should have known was false absent the affiant's disregard for the truth;

b.     Judge Metzger failed to act in a neutral and detached manner;

c.     Detective Broughton in the affidavit in support of the warrant was so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable; or

d.     The warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid.

48.     There is no evidence to even suggest that any of these four alternatives exist to nullify the good faith exception established in United States v. Leon, 468 U.S. 897 (1984). Therefore, alternatively, the good faith Leon exception would apply.

49.     The Defendant also claims that there is insufficient evidence that the images contain minors. The Defendant also argues in conjunction with this that partially downloaded and/or deleted files are not admissible. However, the Defendant presents no case law or other legal precedent to support his conclusions in this regard. The Defendant is confusing suppression with the government's burden of proof at trial. In United States v. Williams, 553 U.S. 285 (2008), the United States Supreme Court stated specifically that courts and juries every day pass upon knowledge, belief, and intent of the state of men's minds. The court went on to state that if the government does not meet its burden beyond a reasonable doubt, then the jury may acquit the defendant.

50.     This Court could not have stated this any better. The arguments made by the Defendant concerning there being "insufficient evidence that the images contained minors"

and that "partially downloaded and/or deleted files are not admissible" is an argument going to the weight of the evidence and the government's burden of proof at trial. It is not a matter for suppression based upon the case law appropriate to the particular facts and circumstances in the record before this Court on the Defendant's Motion To Suppress. His arguments concerning insufficiency of evidence that the images contain minors and that any partially downloaded or deleted files are not admissible can certainly be raised by the Defendant at the appropriate time at trial. The District Court can then rule upon such objections or arguments made based upon the evidence received at that point.

51. The Defendant also argues that there is no evidence that he knew the files contained child pornography. Once again, this is an argument going to the weight of the evidence and the government's burden of proof at trial. It is not an issue to be determined on a pre-trial motion to suppress evidence. Any such arguments or objections can be reserved to be made at the appropriate time by the Defendant at trial. Further, this Court would point out that based upon the testimony received by this Court at the hearing, that the Defendant's argument is not supported by the evidence. The evidence received by this Court was that the Defendant was downloading child pornography and other pornography on his computer in his office at the time that Detective Broughton executed the search warrant. Additionally, the evidence received by this Court was that the Defendant admitted to Detective Broughton that he was downloading and searching for child pornography. This appears to conflict with the argument that there is no evidence the Defendant knew the files contained child pornography. Nevertheless, once again this is an issue to be determined at trial and any such arguments may be reserved until the appropriate time. It is not an issue for suppression.

21

52.    Finally, the Defendant argues that the file names and descriptions are not admissible.  He argues that they are immaterial, irrelevant, and highly prejudicial.  The government's response does not address this argument.  The testimony received by this Court were that the file names which are underlined in Detective Broughton's affidavit in respect to the five downloaded files of suspected child pornography, were on those files on the internet when found and downloaded.  These titles were not made up by any law enforcement officer.  In other words, it is this Court's understanding that those titles were there to be viewed by anyone on the internet, including the Defendant, in searching for particular types of pornography. This Court finds that the titles were on the internet, were associated with these files and are certainly admissible.  This Court finds that they are not suppressible. If the Defendant wishes to make some evidentiary argument at the time of trial concerning the particular titles associated with each of these files as found on the internet, he certainly can do so.  However, those titles are not suppressible based upon the facts presented to this Court at the Suppression Hearing.

53.    The descriptive portions of each of these files as set forth in Detective Broughton's  affidavit are his impressions and editorial comments concerning what he believed he viewed on those files. In the event that Detective Broughton did not testify at trial and the government attempted to introduce these file descriptions to establish what is contained in each file, then the Defendant may have an argument at trial that the descriptions are hearsay.  However, these descriptions are not subject to pre-trial  suppression or exclusion from Detective Broughton's affidavit. If Detective Broughton is asked at trial to describe what he observed on his review of each of the five files, he can testify as to his observations. The Defendant may cross examine him on that testimony and/or attempt to

22

impeach him based upon the actual content of the files which would be available to both the government and the Defendant for introduction into evidence at trial. The Defendant's argument that the prejudice of these descriptions outweighs their probative value is not supported by the evidence. These descriptions are merely one witness' impression of what is contained in those files based upon his observations. This Court would find the descriptions to be objectionable only if the government attempted to introduce them without calling Detective Broughton as a witness. In that event, the Defendant will be able to make any appropriate evidentiary objection at trial. Therefore, the introduction of the titles is certainly admissible in this Court's view since they were titles associated with these particular files as found on the internet, available for viewing by anyone including the Defendant at the time that he searched for this particular type of pornography and are part of the actual evidence seized in this case. The descriptions of these files are admissible at trial only through the testimony of Detective Broughton based upon his impressions of what he viewed on each suspected child pornography file. This is an issue to be resolved at trial based upon the particular circumstances at that time and is not an issue subject to pre-trial suppression.

54.    This Court also points out that the upcoming trial date requires that this Court shorten the time for filing any objections to this Report and Recommendation. The shortening of this time period is authorized by Weiss v. Standard Ins. Co., 2009 WL 1833963 (S.D. Fla. 2009) and Grayson v. Cathcart, 2009 WL 4723271 (E.D. N.Y. 2009). In order to give the District Court sufficient time to review this Report and Recommendation and rule upon it, any objections shall be filed **no later than 12:00 noon on Friday, October 28, 2011**.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion To Suppress Evidence [D.E. #33] be **DENIED**.

23

The parties shall have up and until **12:00 noon on Friday, October 28, 2011** within which to file any objections to this Report and Recommendation with the Honorable K. Michael Moore, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** this 2/st day of October, 2011, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. K. Michael Moore
AUSA Carmen M. Lineberger
Jason M. Wandner, Esq.
Richard D. Kibbey, Esq.